**McKinley DUDLEY, Kennis Butler, and Rodney Phillips, Appellants,**

v.

**STATE of Indiana, Appellee.**

No. 783S263.

Supreme Court of Indiana.

July 15, 1985.

[redacted] 434

James V. Tsoutsouris, Public Defender, Porter County, Joanne Tapocsi, Deputy Public Defender, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants, McKinley Dudley, Kennis Butler, and Rodney Phillips, were tried and convicted by a jury in the Porter County Superior Court and the Honorable Roger V. Bradford imposed their sentences. Kennis Butler and Rodney Phillips were convicted of Robbery, a Class B felony, and Criminal Recklessness, a Class D felony. Each received a sentence of twenty (20) years for Robbery, and four (4) years for Criminal Recklessness: Kennis Butler's sentences to be served consecutively and Rodney Phillips' sentences to be served concurrently. McKinley Dudley was convicted of aiding a robbery, and was further found to be an habitual offender. He was sentenced to a total of fifty (50) years.

Defendants-Appellants now directly appeal their convictions and raise the following fifteen (15) consolidated issues:

1. the granting of the State's Motion *in Limine;*

2. the denial of Appellant Dudley's speedy trial motion for discharge;

3. the denial of Appellants' Motion for Severance;

4. the denial of Appellants Phillips' and Butler's motions to dismiss Count I, Robbery, and Count II, Criminal Recklessness;

5. the denial of Appellant Phillips' Motion for Severance of Counts;

6. the denial of Appellant Butler's Motion for Psychiatric Examination;

7. the denial of Appellant Phillips' Motion for Appointment of New Counsel;

8. the denial of Appellant Phillips' motions for continuances;

9. certain evidentiary rulings;

10. the denial of several motions for mistrial;

11. prosecutorial misconduct;

12. the failure to order the State to disclose certain evidence;

13. the refusal of Appellants' jury instructions and the giving of the State's jury instructions;

14. insufficiency of the evidence to convict Appellant Butler of Robbery and Criminal Recklessness and Appellant Phillips of Criminal Recklessness; and

15. sentencing of Appellants.

On May 27, 1982, Edward Pointer, Kennis Butler and Rodney Phillips drove an Oldsmobile to Chesterton State Bank to commit a robbery. They had planned the robbery with McKinley Dudley, who had volunteered the use of his car and guns. McKinley followed the Oldsmobile part of the way to the bank, then parked where he was to later switch cars to facilitate his cohorts' escape. Once at the bank, Butler and Phillips, armed with handguns, entered. Butler pointed a gun at teller Kay Leggett, entered the tellers' area and removed approximately $8,835.00. Butler and Phillips then fled to the car where Pointer was awaiting them. The bank notified the Portage Police Department immediately thereafter.

Officers Fred Trathen and Charles Heimberg, having received a radio dispatch about the robbery, observed and followed a car matching the description given over the dispatch. After the officers unsuccessfully attempted to stop the car, a high speed chase ensued. Phillips, sitting in the rear seat, fired four shots at Officer Trathen. The pursued car finally came to a sudden stop on the side of the road where all three passengers unsuccessfully attempted to flee; they were caught shortly thereafter.

I

■ Appellants argue that by the trial court's granting of the State's Motion *in Limine,* they were improperly foreclosed from impeaching the following witnesses: Edward Pointer, a co-defendant who plea bargained; Gerri Peters, owner of the Oldsmobile used in the robbery; and Cecil Lewis, an accomplice who was granted immunity. Appellants claim the trial court erred when it held evidence concerning the three witness' criminal activity was inadmissible for impeachment purposes. The general rule is that a witness' credibility may be attacked by questioning him about prior criminal convictions for treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, and wilfull and corrupt perjury along with those crimes involving dishonesty or false statements. *Brown v. State,* (1984) Ind., 459 N.E.2d 376; *Ashton v. Anderson,* (1972) 258 Ind. 51, 279 N.E.2d 210. By applying this rule to the facts at hand, we find the trial court properly granted the Motion *in Limine.*

■ Edward Pointer received a misdemeanor conviction for not having a gun permit as a result of his plea bargain. This misdemeanor does not fall within the crimes specified in *Ashton, supra,* nor does it entail dishonesty or false statements. Therefore, it was properly withheld from the jury. Gerri Peters had been convicted

of prostitution, which also does not fall within the specified crimes enunciated in *Ashton,* nor does it involve dishonesty or false statements. Therefore, this conviction was properly withheld from the jury. Finally, Cecil Lewis' drug dealing conviction does not fall within the crimes set out in *Ashton,* and his parole violation did not result in a conviction. Because criminal acts which do not result in a conviction are inadmissible for purposes of impeachment, Lewis' parole violation was evidence properly withheld from the jury. *Jarvis v. State,* (1982) Ind., 441 N.E.2d 1. Appellants argue, in the alternative, that these witnesses fell within exceptions to the general rule stated in *Ashton.* However, Appellants, after citing numerous exceptions, fail to demonstrate how any one of the three witness' prior convictions fall within any of the exceptions. Consequently, we conclude the trial court properly applied the general rule in *Ashton* by granting the State's Motion *in Limine.* Appellants have failed to demonstrate error by raising this issue.

## II

■ Appellant Dudley claims the trial court committed reversible error by denying his Speedy Trial Motion for Discharge, because trial was scheduled and held three days beyond the seventy day limit of Ind.R. Crim.P. 4(B). There is no dispute that Appellant Dudley fulfilled all the necessary requirements entitling him to the following protection of Ind.R.Crim.P. 4(B)(1):

"If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar."

A trial court may, on its own motion, schedule a trial for a day beyond the seventy (70) day period when the congested nature of its calendar precludes a trial date within the early trial frame. *Jordan v. State,* (1982) Ind., 435 N.E.2d 257. In *Loyd v. State,* (1980) 272 Ind. 404, 398 N.E.2d 1260, 1265, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105, this Court reasoned:

"The court calendar may be congested by a variety of circumstances, among them the unavailability of essential personnel or physical facilities.. We hold that any exigent circumstances may warrant a reasonable delay beyond the limitation of Ind.R.Crim.P. 4, due deference being given to the defendant's speedy trial rights under the rule. The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed except for an abuse of discretion."

In the instant case, the delay was due to court congestion and unavailability of the trial judge on the seventieth day, which was a Friday. Defendant Dudley's case was heard the following Monday. If the seventieth day fell on the weekend, Ind.R. Crim.P. 4(B)(2) provides that the period is tolled until the next day which is not a Saturday, Sunday, or legal holiday. Defendant's cause was delayed only three days because it could not be heard on Saturday or Sunday. Because the trial court properly justified the extension of time, and we find the period of delay a reasonable period, we are of the opinion the trial judge did not abuse his discretion in this matter. Accordingly, Appellant has failed to demonstrate error in this issue.

## III

Appellants next argue that the trial court's denial of a motion for separate trials, made by Appellants Phillips and Butler, was erroneously denied and caused such prejudicial circumstances at trial as to deny Appellants their right to a fair trial. Thus, Appellants seek to have the trial court reversed and to have new and separate trials ordered.

■ Separate trials are clearly not a matter of right, but are discretionary with the trial judge. *Crenshaw v. State*, (1982) Ind., 439 N.E.2d 620; *Baysinger v. State*, (1982) Ind., 436 N.E.2d 96. Once a decision is made regarding joinder or severance, the decision is reviewable only for abuse of discretion. *Frith v. State*, (1975) 263 Ind. 100, 325 N.E.2d 186. A review of abuse entails looking at what actually happened at trial. *Baysinger, supra; Chandler v. State*, (1981) 275 Ind. 624, 419 N.E.2d 142.

■ Appellants Phillips alleges several instances of prejudice at trial due to the fact Appellants were jointly tried. Appellant Phillips argues that he received appointment of a public defender on July 30, 1982 and because of Appellant Dudley's motion for a speedy trial and the corresponding trial date set for September 20, 1982, he was denied adequate time to prepare for trial. We note Appellant has evaded the point, which is to show actual prejudice at trial due to nonseverance. Without a showing of how trial counsel was impaired at trial, no prejudice has been shown, nor relief warranted.

■ Appellant Phillips' next three alleged instances of prejudice resulting from nonseverance, are also instances Appellant Butler urges prejudiced him. First, Appellants argue Cecil Lewis' following testimony prejudiced them such that a mistrial should have been granted:

"VAIDIK Q: I am going to ask you some questions about the Chesterton State Bank robbery. When was the first time that you had any knowledge of this robbery in Portage?

"LEWIS A: Well, about two days before it happened.

Q: Who told you about it?

A: Butler.

Q: Where were you guys at?

A: Riding down [Route] 12.

Q: Who was with you?

A: Dough and a white girl.

Q: What vehicle were you in?

A: Oldsmobile.

Q: What color?

A: Blue and white.

Q: Who is Dough?

A: Right there.

Q: Dudley?

A: Yeah.

Q: What was your purpose in going down 12 that day?

A: Me and Kenny [Butler] was going to rob a liquor store out there."

(Record at 1269–1270).

All Appellants promptly moved for a mistrial, which was denied, but this last answer was struck and the jury admonished. The denial of a motion for mistrial rests largely within the discretion of the trial court and the reviewing court will reverse only when it is shown Defendant was placed in a position of grave peril to which he should not have been subjected. The defendant must affirmatively demonstrate that his rights were substantially prejudiced so as to have denied him a fair trial. *Beal v. State*, (1983) Ind., 453 N.E.2d 190, *reh. denied.* Appellants in the instant case have failed to carry this burden; whatever prejudice may have resulted from Lewis' testimony was cured by the trial court's admonishment of the jury.

■ Second, Appellants Phillips and Butler argue that because Edward Pointer, a co-defendant, testified to receiving threats to himself from unknown persons and because the State did not connect these threats to any one of the appellants, each Appellant was prejudiced to the extent that he was not responsible for the threats. The threats, however, were in no way directly connected to Appellants at all. The trial court properly admitted such testimony for the purpose of explaining to the jury the witness' nervous disposition on the stand and disallowed the questioning as to threats to go any further. The jury could just as easily have inferred someone other than Appellants had made the threats. Consequently, none of the appellants were prejudiced by the fact they were not tried separately.

■ Third, Appellants Phillips and Butler allege prejudice and guilt by associ-

ation with Appellant Dudley who took the stand and admitted his previous criminal activities. We note that the record reveals that at the time Appellant Dudley's attorney offered into evidence Dudley's FBI record, reflecting accurately Dudley's arrests and convictions, counsels for Appellants Phillips and Butler stated they each had no objection to this evidence. Furthermore, a trial court does not abuse its discretion in refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. *Walker v. State*, (1983) Ind., 444 N.E.2d 842, 849; *Davis v. State*, (1978) 269 Ind. 1, 379 N.E.2d 132. Therefore, Appellants are foreclosed, by failure to object at trial, from arguing prejudice due to the jury's knowledge of Appellant Dudley's criminal history. *Wagner v. State*, (1985) Ind., 474 N.E.2d 476.

■ Appellant Butler, who did not testify at trial, claims he was prejudiced when Appellant Dudley took the stand in his own behalf and the State asked, "Did Kenny Butler ever tell you that he had committed this robbery?" (Record at 1741). Before Dudley answered, Butler moved for a mistrial and in the alternative sought to have the question struck and the jury admonished. The trial court struck the question and admonished the jury. No other instances of this kind occurred. We find Appellant Butler has failed to demonstrate he was placed in a position of grave peril to which he should not have been subjected due to this instance. *Beal, supra.* Accordingly, the trial court acted properly by denying Appellant's motion for a mistrial.

■ Finally, Appellant Dudley alleges the trial court erred in failing to sever his trial because the trial of all Appellants together resulted in prejudicial confusion and complexity to the jury. However, a search of the record reveals Dudley's counsel did not at any time before or during trial move to sever Dudley's trial for aiding

a robbery. Furthermore, Appellant Dudley does not give any indicia of the jury's confusion; he merely alleges trial of the three appellants together was complex and, therefore, confusing to the jury. We disagree and, in the absence of evidence that the jury was confused, hold the trial court properly joined Appellants for the purpose of trial. Since Appellants have failed to demonstrate any prejudice due to the trial court's failure to sever their trials, no error has been raised in this issue.

## IV

■ Appellants Phillips and Butler were each charged, *inter alia*, with Count I, Robbery and Count II, Criminal Recklessness. Both Appellants assign as error the trial court's failure to dismiss these counts against them. Appellants submit with regard to Count I, Robbery, that the charging information was defective because first, it did not specify what the Appellants did and that they acted together, and second, it did not specify the amount or description of the U.S. currency. Appellants argue that due to the lack of specificity in the information, they were unable to adequately defend themselves. Thus, their motion to dismiss should have been granted.

The information stated Appellants Phillips and Butler were being charged with Robbery, a Class B Felony, and more specifically stated they did:

"Knowingly or intentionally take United States Currency from tellers and bank employees at Chesterton State Bank, U.S. Hwy. 20, Portage, Porter County, Indiana, and did put those people in fear, said offense being a Class B Felony because the offense was committed while the perpetrators were armed with deadly weapons, to-wit: hand guns, then and there being...."

(Record at p. 34).

A defendant is entitled to be informed specifically of the crime with which he is charged so that he may be able to intelligently prepare a defense. *Dorsey v. State,*

(1970) 254 Ind. 409, 260 N.E.2d 800. The purpose of an information is first to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction and second, to furnish the accused with such a description of the charge as will enable him to make his defense and avail of his conviction or acquittal for protection against further prosecution for the same offense. *Trotter v. State*, (1981) Ind., 429 N.E.2d 637. The information in the instant case sufficiently states that Appellants were being charged with the same facts constituting a robbery; the only logical inference being they acted in concert. Further, it was not necessary for the information to state the amount or further describe the U.S. currency which was stolen. *Randall v. State*, (1892) 132 Ind. 539, 32 N.E. 305. Appellants were given sufficient notice of the crime against which they had to defend themselves.

Next Appellants argue the trial court erred by failing to dismiss amended Count II, Criminal Recklessness. Appellants allege the information failed to state the crime in plain and concise language and failed to name the proper county for venue.

The information read as follows:

"Kennis A. Butler ... and Rodney W. Phillips ... did then and there, at and in said County [Porter] and State, recklessly, knowingly, or intentionally perform an act that created a substantial risk of bodily injury to other people, to-wit: drove a vehicle at excessive speeds on a public highway and fired a loaded weapon at a pursuing police officer while other traffic was on the highway, said offense being a Class D felony because of the use of a deadly weapon, to-wit: hand gun, then and there being...."

(Record at 43).

Appellants complain that the information did not specify which Appellant drove the car and which shot the gun. The fact that the information fails to specify who entered the bank, who took the money, who drove the car, and who fired a gun shot at a police officer, does not void the information. It is well settled that one is criminal-

ly liable for the acts done by his confederates which were the probable and natural consequence of their common plan. *Parks v. State*, (1983) Ind., 455 N.E.2d 904. Consequently, the information did state with sufficient specificity Appellants' acts constituting criminal recklessness. Further, Appellants argue that the information states the criminal recklessness occurred in Porter County when in fact none of the elements constituting criminal recklessness occurred in Porter County, rather all the elements transpired in Lake County. Accordingly, Appellants argue, the criminal recklessness charge should have been tried in Lake County, the proper venue, and the trial court was without jurisdiction regarding Count II. However, recent cases have shown that when the various acts which comprise the crime are part of a "single chain of events," the charge may be brought in the county where the acts began or ended. *Sears v. State*, (1983) Ind., 456 N.E.2d 390; *Osborne v. State*, (1981) Ind., 426 N.E.2d 20. In *Sears v. State, supra,* we held that if two crimes "were integrally related," the fact that the acts constituting one of the crimes were committed in a separate county from those acts constituting the other crime charged does not preclude trial of both crimes in the same county. Because in the instant case the charge of criminal recklessness was based on Appellants' acts of exacting an escape from the robbery, these acts are clearly integrally related to the robbery charges. Consequently, it was not error for the trial court to deny Appellant's motion to dismiss Count II. There is no error demonstrated by this issue.

V

Next Appellant Phillips contends the trial court erred by failing to dismiss his motion for severance of charges for trial. Appellant Phillips was charged with robbery, criminal recklessness, and attempted murder. The criminal recklessness charge and the attempted murder charge arose from the fact he fired a gun from the car during his escape. Appellant argues that because

the intent element is the same for both charges and both are based on the same facts, the jury was unable to distinguish the evidence and apply the law intelligently to each offense. He further argues that because yet another charge was filed against him, the three charges were sufficiently complex to deny him a fair trial.

■ We find little if any merit in Appellant's argument. Ind.Code § 35–3.1–1–9(a)(2) (Burns Repl.1979) [recodified at Ind.Code § 35–34–1–9 (Burns 1985)] provides that two or more offenses may be joined in the same information, with each offense stated in a separate count, when the offenses "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Whether charges are severed for trial is a matter within the trial court's discretion, and Appellant must demonstrate clear error upon appeal. *Eubank v. State*, (1983) Ind., 456 N.E.2d 1012. In making its decision, the appellate court considers the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. *Jameison v. State*, (1978) 268 Ind. 599, 377 N.E.2d 404. In the case at bar, joinder of the charges arose from a single ongoing scheme. The elements of the criminal recklessness charge and the attempted murder charge were different except for one element, which does not lend much plausibility to Appellant's allegation that the trial of the two crimes jointly caused the jury to be confused. The robbery charge entailed wholly distinguishable elements and a separate factual basis, allowing the jury to separate this crime and decide it apart from the other two. There is nothing exceptionally confusing or complex about this process. In the absence of any indication that the three charges actually caused confusion, we cannot infer that the evidence was so complex as to have caused an unfair trial. Furthermore, although Appellant Phillips filed his motion for severance of the charges, he failed to renew the motion at trial, thereby waiving the issue. Ind.

Code § 35–3.1–1–12(b) (Burns Repl.1979) [recodified at Ind.Code § 35–34–1–12 (Burns Supp.1985)].

## VI

Appellant Butler next alleges the trial court erred by denying his Motion for Psychiatric Examination which sought determination of his competency to stand trial and gave the trial court notice of Butler's intent to raise the insanity defense. Appellant argues the trial court erred by not following procedures set out in Ind.Code § 35–5–3.1–1(a) (Burns Repl.1979) [recodified at Ind.Code § 35–36–3–1 (Burns 1985)] and Ind.Code § 35–5–2–2 (Burns Repl.1979) [recodified at Ind.Code § 35–36–2–2 (Burns 1985)].

■ The trial court did not err by determining Appellant was competent to stand trial. Ind.Code § 35–5–3.1–1(a) reads as follows:

"If at any time before the final submission of any criminal case to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, *has reasonable grounds* for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) competent disinterested psychiatrists, who shall examine the defendant for the purpose of forming an opinion as to whether the defendant has that ability and shall testify concerning the same at the hearing." (emphasis supplied).

If a trial court finds no reasonable grounds exist, then no appointment of psychiatrists is required and the court's decision is reviewable only for abuse of discretion. *Green v. State*, (1981) Ind., 421 N.E.2d 635, (remanded on other grounds); *Dragon v. State*, (1979) 270 Ind. 223, 383 N.E.2d 1046, *cert. denied*, (1979) 442 U.S. 912, 99 S.Ct. 2829, 61 L.Ed.2d 279. Appellant argues that according to *Morris v. State*, (1975)

263 Ind. 370, 332 N.E.2d 90, *reh. denied,* he should be granted a new trial. In *Morris,* a new trial was ordered on appeal because no inquiry was conducted by the trial court into the matter of insanity or competency once Appellant raised these matters. That was not the situation involved in the case at bar. Appellant Butler, at a hearing outside the presence of the jury, presented evidence of his past and present mental condition. His mother testified that nine (9) years ago she had taken Appellant for psychiatric counseling and that there was a history of mental illness in the family. Appellant Butler, unlike the appellant in *Morris,* was given a hearing, the absence of which was fatal in *Morris.* Also, the trial court did not abuse its discretion in determining, in light of the limited evidence presented at the hearing, that Butler was competent to stand trial. Accordingly, Appellant Butler is not entitled to a new trial.

■ Appellant Butler further asserts the trial court erred by not following Ind. Code § 35–5–2–2 which mandates appointment of psychiatrists upon filing of a notice of an insanity defense. However, Ind.Code § 35–5–2–1 (Burns Repl.1979) [recodified at Ind.Code § 35–36–2–1 (Burns 1985) ] reads as follows:

> "When the defendant in a criminal case intends to interpose the defense of insanity, he must file a notice of that intent with the trial court within thirty [30] days after entry of a plea of not guilty. However, in the interest of justice and upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial."

Appellant did not raise the insanity defense until three days after trial had begun. Butler's counsel argued that the defense was not interposed previously because it was not until the second day of trial that Appellant's mother came forth with information upon which to base the insanity defense. In denying the motion, the trial judge stated as follows:

> "Well, as far as the notice problem on the insanity defense, I would imagine that we also deal with something that

reasonably should have been discovered and, obviously, counsel was just made aware of it yesterday, but the knowledge on Mrs. Robinson's is that at least seven years ago, that was known and the problems, all the evaluations, were done before that, so it is not something that the Court can consider newly discovered anyway. Also, I don't think an emotional—the right word—disorder, emotional problem arises · necessarily to a psychiatric problem. The Court is going to deny the motion."

(Record at 614).

Ind.Code § 35–5–2–1 makes clear that a defendant's right to plead the insanity defense is conditioned upon a showing of good cause once the statutory period has expired and before trial has commenced. Since trial had begun and Appellant failed to offer evidence rising to the level of a good cause showing for why the defense was not previously raised, the trial court properly denied Appellant's Motion for Psychiatric Examination. Accordingly, Appellant Butler has failed to demonstrate error by raising this issue.

### VII

Appellant Phillips alleges the trial court erred by denying his Motion for Appointment of Counsel. The following events occurred in sequence. An information alleging robbery and criminal recklessness was filed against Appellants Butler and Phillips, and co-defendant Pointer. Thereafter, McKinley Dudley was charged with aiding a robbery. Deputy Public Defender Hoehner then became counsel for Appellant Butler and co-defendant Pointer, but only two days later withdrew as Butler's attorney due to a conflict of interest. A private attorney was appointed for Butler. Then Deputy Public Defender Skinner was appointed counsel for Dudley. However, Appellant Dudley raised a conflict of interest problem and the trial court appointed private counsel for him. Private counsel McKenna then entered an appearance for co-defendant Pointer, such that at that point none of the defendants were repre-

sented by counsel from the Public Defender's Office. Deputy Public Defender Taposci was then appointed counsel for Appellant Phillips. Appellant Phillips moved for appointment of new counsel, but the court denied his motion. Appellant Phillips now claims he was denied effective cross-examination of Appellant Dudley and co-defendant Pointer because his attorney came from the same office that had previously represented these witnesses.

A trial court has discretion to deny a defendant's request for a new court-appointed attorney; such ruling is reviewable only for an abuse of discretion. *Houze v. State*, (1982) Ind., 441 N.E.2d 1369. Denial of a request for change of counsel is not error absent a showing that defendant was prejudiced. *Jones v. State*, (1983) Ind., 449 N.E.2d 1060. In *Richardson v. State*, (1982) Ind., 439 N.E.2d 610, we held that although the possibility of conflict existed where defendant and co-defendant were represented by different pauper attorneys who were members of the same firm, the defendant failed to sustain the burden of proving there was actual conflict and resulting prejudice to him. In the case at bar, Phillips' attorney, Taposci, represented Phillips at a time when no other attorney from the public defender's office was representing any of the co-defendants. Attorney Taposci vigorously and competently cross-examined Appellant Dudley and co-defendant Pointer. Appellant Phillips claims to have been prejudiced but fails to cite a single example of prejudice. He states his counsel did not effectively cross-examine Dudley and Pointer, but never substantiates the statement with facts. He merely relies upon the scenario related above and claims the trial court recognized a conflict of interest in Butler's and Dudley's circumstances, but erred by failing to recognize it in his. However, Butler and Dudley raised the conflict problem at a time when the Public Defender's Office had attorney's representing at least two defendants at once, and in both instances an actual conflict was shown to exist. Appellant Phillips alleged only a potential conflict of interest in seeking new counsel and

at a time when no other defendant was being represented by counsel from the Public Defender's Office. In sum, Appellant Phillips has failed to demonstrate his attorney's effectiveness was hindered by a conflict of interest or that any other prejudice resulted from the trial court's failure to appoint new counsel. Accordingly, the trial court did not err by denying Appellant Phillips' Motion for Appointment of New Counsel. There is no showing of error on this issue.

### VIII

Appellant Phillips alleges the trial court abused its discretion by denying his request for continuances. The record reveals that charges were filed against Phillips on May 28, 1982. On July 30, 1982, a public defender was appointed to represent Phillips. In August, a trial date of September 20, 1982 was set. On August 27, 1982, Phillips' counsel filed a Motion for Continuance and renewed the motion on August 30, 1982. The trial court, however, denied the motions.

The granting or denial of a motion for continuance based on non-statutory grounds is within the discretion of the trial court. In order to demonstrate an abuse of discretion, the record must reveal that the defendant was prejudiced by the failure to grant the continuance. *Hunt v. State*, (1983) Ind., 455 N.E.2d 307. In the case at bar, Phillips argues that due to the denial of continuances his trial counsel was not fully prepared for trial. However, once again, Appellant Phillips fails to substantiate his claim with facts. He neither alleges nor shows that evidence was not presented due to the need for additional time to prepare. He also fails to demonstrate prejudice in any other respect. Accordingly, the trial court did not err in denying his requests for continuances.

### IX

Numerous evidentiary rulings are assigned as error by Appellants, however none constitute reversible error.

First, Appellants maintain the trial court erred by allowing Detective Keith Burden to testify, over their objection, concerning his conversation with State's witness, Edward Pointer. After Edward Pointer testified for the State, the State called Detective Keith Burden to testify as to what Pointer had told him in a previous interview. Burden's testimony was offered not only to establish he interviewed Pointer, but also to elicit further testimony about the investigation that followed. Appellants argue that the admission of Burden's testimony, which recounted what Pointer told him about the robbery, amounted to hearsay. However, Burden's testimony is not barred by the hearsay rule as it is an exception pursuant to our ruling in *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. Prior out-of-court statements of a declarant present and available for cross-examination are admissible as substantive and not merely impeaching evidence. *Id.* This testimony was not barred since Pointer previously testified about the robbery, implicated Appellants in the robbery, and was subject to full cross-examination. Further, Pointer was available for cross-examination in regard to statements attributed to him by Burden. Under these circumstances it was not error for the trial court to admit Burden's testimony.

Next, Appellants allege the trial court erred by not declaring a mistrial when the State's witness, Cecil Lewis, responded to a question by stating he and Appellant Kenney, on another occasion, were going to rob a liquor store. Defendant Butler objected and moved for a mistrial, but the motion was denied. The trial court, however, admonished the jury to disregard the testimony and ordered the testimony to be stricken from the record. A ruling on a motion for mistrial is within the sound discretion of the trial court. Absent a showing that the accused was placed in a position of grave peril to which he should not have been placed, the trial court's ruling will not be disturbed. *Morgan v. State*, (1981) 275 Ind. 666, 419 N.E.2d 964. Usually, a prompt admonition that certain testimony is to be disregarded is sufficient

to protect the rights of a defendant. *Conley v. State*, (1983) Ind., 445 N.E.2d 103. In the case at bar, Butler was not placed in a position of great peril to which he should not have been subjected. The trial court's admonishment to the jury sufficiently protected Appellant's right to a fair trial. Accordingly, the trial court did not err by failing to declare a mistrial.

Next, Appellant Phillips contends the trial court erred by denying his Motion to Suppress which was based upon the assertion his statements to police were involuntary due to the influence of the drug Demerol. The State carries the burden of proving, beyond a reasonable doubt, that an accused intelligently and voluntarily waived his rights and a statement was voluntarily given. *Thomas v. State*, (1983) Ind., 443 N.E.2d 1197. In reviewing a trial court's determination of the voluntariness of a waiver and statement, we look to the totality of the circumstances. We review this question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there is substantial evidence of probative value to support the trial court's finding. *Brown v. State*, (1979) 271 Ind. 129, 390 N.E.2d 1000, 1002, *reh. denied.* Phillips was shot by the police as he attempted to flee the robbery. Prior to Phillips' release from the hospital, his physician administered seventy-five (75) milligrams of Demerol, a pain killer. Thereafter, Officer Roger Kiser accompanied Phillips in an ambulance to the prison. Enroute to the prison, Kiser informed Phillips of the charges against him and advised him of his *Miranda* rights. Phillips stated he understood his rights, signed a waiver form, and admitted his participation in the robbery. Kiser testified at the hearing that Phillips was coherent, responsive to questioning, did not complain of pain, and did not appear confused. This is sufficient evidence from which a trial court could conclude Phillips' statement was made voluntarily. Accordingly, the trial court did not err by denying Phillips' Motion to Suppress.

Next Appellant Phillips argues his clothing should not have been admitted into evidence because the State failed to establish a complete chain of custody to connect the clothing to Appellant. After the shooting and arrest of Phillips, Officer David Reynolds accompanied Phillips to the hospital where several paramedics removed Phillips' clothing with scissors. The articles of clothing were placed in a bag, taken to the Portage police station and given to Officer Fred Untch. Later, Officer Untch ordered them to be laundered. The items remained in the custody of the Portage Police Department until brought to the court room. Appellant argues the trial court erred by admitting State's Exhibits 27A, 27B, shirt pieces, 28, a shirt, 29, pants, and 86A and 86B, shoes.

It is well established that the purpose of establishing a chain of custody for seized evidence is to show a complete chain of possession from the original receiver to the final custodian, thus connecting the evidence in question with the accused. *Davis v. State,* (1985) Ind., 472 N.E.2d 922; *Williams v. State,* (1979) 270 Ind. 573, 387 N.E.2d 1317. Nonfungible items by their nature do not require the high degree of scrutiny that must be applied to fungible items. *Green v. State,* (1984) Ind., 461 N.E.2d 108; *Wilson v. State,* (1975) 263 Ind. 469, 333 N.E.2d 755, *reh. denied.* A nonfungible item therefore may be admitted into evidence based on testimony that the item is the one in question and is in a substantially unchanged position. *Borom v. State,* (1984) Ind., 470 N.E.2d 712. Officer Reynolds and Detective Keith Burden identified the clothing as that worn by Appellant Phillips during the robbery. Although the clothing had been altered by the paramedics in cutting it to aid Phillips, Reynolds testified the necessary alterations were made by paramedics. Consequently, the fact that the items had been altered in no way underscored the purpose of the rule requiring the seized evidence to be substantially unchanged: namely, to connect the item with the accused. In this instance, the fact that the items had been altered went to the weight of the evidence, not their admissibility. Furthermore, the laundering of Phillips' clothes was not a substantial alteration in this situation. Consequently, the trial court did not err by admitting these items.

Next Appellant Phillips argues the trial court erred by allowing Officer Fred Trathen to testify as to his conclusion that bullet paths and powder burns existed on the car used by Appellants. Officer Trathen testified that:

"By the window where the individual had leaned out to fire at me, there was two places where he apparently had struck his own vehicle. The bullets had gouged through there.... There were a couple of spots on the vinyl roof which appeared to have been from powder burns."

(Record at 982, 983).

Appellant Phillips argues the trial court erred by admitting this testimony into evidence since Officer Trathen was not sufficiently qualified as an expert witness to offer such an opinion. The decision to allow a witness to offer an opinion is left to the discretion of the trial judge. Our review is limited to a determination of whether the trial court abused its discretion. *Blackmon v. State,* (1983) Ind., 455 N.E.2d 586. Furthermore, when the opinion offered requires special knowledge or experience beyond that of the average juror, it is the function of the trial judge to determine from the foundation of education and experience whether the witness is sufficiently qualified as an expert to make it likely his informed inference will aid the jury. *Id.* Officer Trathen's conclusions were based upon his experience and training in firearms. Furthermore, Officer Trathen was capable of explaining to the jury what a powder burn is and how it is caused by a firearm. The jury was made fully aware of the factual basis for Officer Trathen's opinion, and though he was not a firearms expert, he was more knowledgeable of firearms than the average juror. His opinion was reasonably considered by the trial court as being an aid to the jury. The trial court, therefore, did not abuse its discre-

tion in permitting Officer Trathen's opinion.

■ Appellant Butler contends the trial court erred by overruling his pre-trial motion to suppress an in-court identification of him because it was tainted by an unduly suggestive line-up conducted immediately after the crime. One-on-one confrontations between eye witnesses and suspects shortly after the commission of a crime are permitted because of the value of permitting witnesses to view a suspect while the image of the offender is fresh in their minds. Whether such a line-up is so suggestive as to violate a defendant's due process rights depends upon the surrounding circumstances. *Hill v. State*, (1982) Ind., 442 N.E.2d 1049.

■ In the present case, although a one-on-one confrontation was conducted shortly after the crime, the conduct of the police was not unduly suggestive. Within thirty (30) to forty-five (45) minutes after the robbery, Officer Edward Lloyd transported three bank employees to the scene of Appellant's arrest. The handcuffed suspects were displayed individually to each employee. Butler was positively identified as a perpetrator of the robbery. The fact that Butler was handcuffed at the time was not so unduly suggestive as to render the line-up violative of Appellant's due process rights. Accordingly, the line-up was not tainted such that a subsequent in-court identification by any of the witnesses would also be impermissible. Therefore, the trial court did not err by overruling Butler's pre-trial motion to suppress the in-court identification of himself.

Defendant Butler next claims the trial court erred by admitting his confession into evidence because it was not voluntarily given. Prior to trial, Appellant Butler filed a motion to suppress evidence alleging his statements to police were involuntary and a waiver of rights form had not been signed. After a hearing, the motion was denied and testimony concerning Butler's statements to police was admitted into evidence over Butler's objection.

The State carries the burden of proving beyond a reasonable doubt that an accused intelligently and voluntarily waived his rights and a statement was voluntarily given. *Thomas v. State*, (1983) Ind., 443 N.E.2d 1197. In reviewing a trial court's determination of the voluntariness of a waiver and statement, we look to the totality of circumstances. In doing so we do not weigh the evidence, but consider the evidence which supports the decision of the trier of fact where the evidence is in conflict, along with any uncontested evidence presented by an accused. *Hughes v. State*, (1983) Ind., 453 N.E.2d 275.

In the instant case, Butler was apprehended and transported to the Portage police station where he was advised of his *Miranda* rights by Officer Roger Kiser. Butler refused to sign a waiver of rights form, but when booking procedures began he volunteered that he had participated in the robbery but did not shoot any police officer. Officer Kiser testified at trial that no question was put to Butler immediately before Butler volunteered his statements, nor was any promise made to induce Butler to talk. Kiser further testified there was no force or threat of force used to extract the confession. Appellant asserted at trial and presently asserts otherwise, but as already indicated we will not reweigh the evidence.

■ A review of the totality of circumstances supports the trial court's finding that Butler's waiver of rights and statement to police were voluntary. Butler's refusal to sign a waiver of rights did not preclude Officer Kiser from questioning him further. Butler had been advised of his *Miranda* rights, acknowledged he understood them, and volunteered information to the officer. By his words and actions he indicated he wished to waive his rights. Accordingly, the trial court did not err by admitting Appellant Butler's confession into evidence. There has been no error demonstrated by this issue.

X

Appellants assign as error several incidents wherein the trial court denied their

motions for a mistrial. First, Appellants assert the trial court erred in denying their motion for a mistrial when witness Pointer was allowed to testify that threats had been made to him and his family the night before he was to testify. Appellants moved for a mistrial on the grounds the State was attempting to introduce evidence of threats communicated by Defendants to Pointer. Pointer was a co-defendant who entered into a plea agreement. The prosecutrix made it clear to the trial judge that she was introducing the testimony about the threats to explain witness Pointer's extreme nervousness and not to attribute such threats to any of the defendants. Furthermore, the prosecutrix did not link the threats to any one of the defendants because her purpose was not to attribute the threats to the defendants.

 A trial judge has great discretion to determine whether to grant a motion for mistrial. *Ramos v. State*, (1982) Ind., 433 N.E.2d 757, *reh. denied*. In order to persuade a reviewing court that the trial court abused its discretion by denying a motion for a mistrial, the defendant must demonstrate he was placed in a position of grave peril to which he should not have been subjected. *Morgan v. State*, (1981) 275 Ind. 666, 419 N.E.2d 964. In light of the fact there was no direct evidence connecting defendants to the alleged threats, the trial court did not abuse its discretion in denying their motion for a mistrial. The testimony was admissible for the purpose of explaining to the jury Pointer's temerity and nervousness on the stand. The testimony did not place Appellants in a position of grave peril to which they should not have been subjected. Accordingly, the trial court did not err by denying Appellants' motion for a mistrial.

Next Appellant Dudley claims the trial court erred by denying his motion for a mistrial when Detective Keith Burden testified that Dudley refused to be interviewed. During direct examination of Officer Burden by the State the following colloquy occurred:

"Q. Did you have occasion to interview any other suspects in this case?

"A. Any other suspects?

"Q. Yes.

"A. I met with McKinley Dudley at his residence and attempted to interview him, but he would not talk.

"MR. GERMANN: Your Honor, may we approach the bench, please?"

(Record at 1154).

Subsequently, Dudley moved for a mistrial on the basis his due process rights were violated because the prosecutrix impermissibly used his post-arrest silence and prejudicially penalized him for exercising his constitutional right to remain silent. The motion was overruled and the jury admonished to disregard the response.

 Dudley concedes an admonishment may be enough to cure testimony elicited by the State which comments upon a defendant's failure to testify. However, Dudley argues the trial court erred by denying his motion according to *Jones v. State*, (1976) 265 Ind. 447, 355 N.E.2d 402. In *Jones* we held that the questioning by the prosecutor was error and the trial court's admonition to the jury was insufficient to remedy the harm. However, in *Jones* a defendant was asked over a dozen times why he had not told the police or press of his innocence. The trial court permitted this questioning and admonished the jury that the defendant was under no duty to speak. The case at bar presents a highly distinguishable factual setting. The *brief* dialogue between the prosecutrix and Burden did not directly point out Dudley's invocation of his right to remain silent as in *Jones*. Also, there was no attempt by the State to impeach Dudley with his silence or to force him to explain his silence. The admonishment in this case was sufficient to cure any harm. Consequently, the trial court did not err by denying Dudley's motion for a mistrial.

Defendant Dudley also claims the trial court erred by denying his motion for mistrial based upon the trial court ordering one of three prior unrelated felony convictions be stricken from the habitual offend-

er count. The trial court ordered a 1976 felony conviction be stricken since the exact date of the conviction was not established. Dudley argues he was prejudiced since the allegation of more than two felony convictions made it easier for the jury to determine he actually had two valid felony convictions.

It is well settled that proof of three or more felony convictions should be treated as surplus. *Hall v. State*, (1980) 273 Ind. 507, 405 N.E.2d 530, *reh. denied.* If actual proof of more than two felonies is treated as surplus, it is not reversible error to allege excess felonies, even though they are not subsequently proved. *St. Mociers v. State*, (1984) Ind., 459 N.E.2d 26, *reh. denied.* Accordingly, Dudley has failed to show reversible error by the court's denial of his motion for a mistrial.

Appellants claim the trial court committed reversible error by allowing five uniformed policemen, dispersed throughout the courtroom, to remain during *voir dire* and by permitting police officers to lead Appellants from the courtroom during *voir dire* examination. In order to persuade a reviewing court that the trial court abused its discretion by denying a motion for mistrial, a defendant must demonstrate he was placed in a position of grave peril to which he should not have been subjected. *Morgan v. State*, (1981) 275 Ind. 666, 419 N.E.2d 964. Upon review of the record, we find that in the early stages of *voir dire*, counsel for Appellant Butler objected to Appellants being led from the courtroom in handcuffs, asking only the procedure be discontinued in the future. The Court agreed to discontinue this procedure. Appellant now fails to allege the procedure was not discontinued, nor does he show which, if any, of the prospective jurors viewing the handcuffed Appellants became jurors at trial. Appellants therefore have failed to demonstrate they were placed in a position of grave peril to which they should not have been subjected. Furthermore, in light of the nature of the crimes with which Appellants were charged, armed robbery and criminal recklessness, and their crimi-

nal history, it was not an abuse of discretion for the trial court to permit five policemen to remain in the courtroom.

### XI

Appellants' next assignment of error entails allegations of inappropriate gestures and comments made to the jury by the prosecutrix. Appellants argue her actions rose to a level of misconduct highly prejudicial to them. Nonetheless, Appellants fail to cite one specific example of such misconduct and even more significantly, made no objections at trial to the alleged misconduct. Accordingly, Appellants have waived their right to have this issue reviewed. *Mitchell v. State*, (1983) Ind., 455 N.E.2d 1131.

### XII

Appellants claim the trial court erred by not granting a new trial when the State failed to comply with general discovery orders. Appellants advance four separate instances to support their claim. First, Appellants allege the State's failure to disclose Cecil Lewis' occupation as an F.B.I. informant and that Gerri Peters had a brain impairment due to surgery was of such prejudicial impact as to merit a reversal. A trial court is granted deference in finding what constitutes substantial compliance with its discovery order. Absent clear error, the trial court's decision will not be overturned. *Hunt v. State*, (1983) Ind., 455 N.E.2d 307. Further, a prosecutor's duty to disclose evidence other than that which is particularly requested can be measured by determining whether the evidence is so obviously exculpatory that the failure to disclose it would deny defendant a fair trial. *Richard v. State*, (1978) 269 Ind. 607, 382 N.E.2d 899, *cert. denied*, (1979) 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781. Further, omitted evidence, as evaluated in the context of the entire record, must create a reasonable doubt that did not otherwise exist. *United States v. Agurs*, (1976) 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342, 354–355.

It is notable in the case at bar that the information undisclosed to the defense is not directly exculpatory, rather it is impeaching evidence. The only evidence before the trial court and before this court that Cecil Lewis was an F.B.I. informant and Gerri Peters was mentally impaired due to brain surgery is an affidavit filed by the defense claiming the Prosecutrix and Officer Kiser had indicated these matters in a conversation after the jury had retired for deliberation. Officer Kiser failed to recall making any statements giving any indication that Cecil Lewis was an F.B.I. informant and Gerri Peters was mentally impaired. In light of the fact that such alleged evidence was merely impeaching in nature, as opposed to directly exculpatory, and the weak evidence supporting the allegation that the Prosecutrix intentionally withheld exculpatory evidence, we do not find the trial court erred in denying a new trial or that Appellants were denied a fair trial.

Next Appellants contend the trial court erred by failing to order the State to reveal the order of the State's witnesses and the area of their testimony. However, the trial court did advise the State to disclose the area of testimony in order to assist the defense in preparation of cross-examination and the State responded as follows:

"MS. VAIDIK: Your Honor, at this time I would like to say that on the record that I will comply with the Court's request to give general groups of persons. So that the defense counsel is aware, I plan to call Edward Pointer to the stand, followed by bank employees, then police officers, then accomplices and then detectives in charge of this investigation. That is a general order.

A lot of people are on vacation on my list of witnesses, are planning to go on vacation. I anticipate a lot of them, I might have to call out of order. If I do call one of them out of order from that list, I will, the day before, tell the defense counsel who is going to be called out of order."

(Record at 2228.)

Further, the trial court informed Appellants that if there were any problems, he would entertain their motions and recess so that any necessary preparation could be done. Consequently, Appellants have failed to demonstrate any prejudice. Further, the facts upon which Appellants base their claim are unsupported by the record.

Finally, Appellants argue the trial court erred by denying their motion for a mistrial, alleging the State failed to give to the defense pursuant to a discovery order, notes of an interview between defense witness Regina Aldridge and the Portage Police Department. During cross-examination of defense witness Aldridge, by the State, the following occurred:

"Q. Did you like Cecil Lewis?"

"A. Yeah, he was all right.

"Q. Is that what you told the police five days ago?

"A. Yes."

When a discovery order has been violated, the choice of remedy for the violation lies within the sound discretion of the trial court and will not be overturned absent clear evidence of abuse of discretion. *Anderson v. State*, (1983) Ind., 448 N.E.2d 1180. The primary elements for a court's consideration are whether the breach was intentional or in bad faith and whether substantial prejudice resulted. *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475. In the case at bar, the defense did not include Aldridge as a witness until after trial had commenced. Since Aldridge was a defense witness, the defense, in all likelihood thoroughly questioned her regarding her statements to police before she testified. There was a very weak showing that the State had withheld this evidence in bad faith or intentionally withheld it and Appellants were not substantially prejudiced by the court's denial of their motion for a mistrial. Appellants have failed to demonstrate reversible error by the arguments raised in this issue.

## XIII

■ Appellants contend the trial court erred by giving certain tendered instructions by the State, and refusing to give certain instructions they tendered. First, Appellants Butler and Phillips argue the trial court erred by giving the State's Final Instruction Number Four which stated: "The Court has already ruled that as a matter of law Porter County has jurisdiction over the charges in this case. You should follow this ruling." (Record at 242). Appellants contend this instruction invaded the province of the jury to determine the facts and apply the law. However, we already have determined in Issue IV, *supra*, that the trial court properly determined as a matter of law that Porter County was a proper venue for all the criminal charges. Venue was not subsequently a matter for the jury to redetermine. Accordingly, the trial court did not err by giving this instruction.

■ Next Appellants argue the trial court erred by refusing to give Appellants' Final Instruction Number Two, instructing the jury on the application of the defense of duress. An instruction is proper only if there is some evidence of probative value to support it. *Priestley v. State*, (1983) Ind.App., 451 N.E.2d 88. Further, Ind. Code § 35–41–3–8 (Repl.1979) does not allow the defense of duress to be raised when the defendant is charged with robbery. However, Appellant argues that in *Adcock v. State*, (1981) Ind.App., 421 N.E.2d 723, *trans. denied*, an exception to this rule was created which applies in this situation. In *Adcock*, the Court of Appeals held that the giving of the instruction on the defense of duress was not error where Defendant testified her reason for entering a grocery store, wherein she had agreed to act as the principal's victim to make the robbery easier, was that she was afraid the principal might kill the store owner. In holding the giving of the duress defense instruction was not error, the Court of Appeals affirmed Ms. Adcock's conviction. Factually, Appellant's case is distinguishable in that the instruction on duress was not given and rather than affirm the trial court, Appellants seek a reversal. It may be harmless error for a duress instruction to be given, as was the holding in *Adcock*, but it does not necessarily follow that it is reversible error when the trial court does not give the instruction on duress. Furthermore, Appellants produced such weak evidence supporting the defense of duress that the jury's lack of consideration of the defense was harmless. Carolyn Collins testified briefly that she lived in the apartment above that of Kennis Butler and his girlfriend. She testified she overheard Cecil Lewis say Butler had better pay him some money. Joyce Robinson, Butler's girlfriend, testified that Cecil Lewis told Butler to get out of bed and come with Lewis, the day of the robbery, or else Butler was a "dead man." This evidence alone, in light of the overwhelming evidence produced at trial that Butler helped plan and participated in the robbery, so weakly supported the defense of duress that Butler did not suffer any prejudice by the jury not considering the defense of duress. Accordingly, we find Butler was not entitled to have the instruction on the defense of duress given.

■ Appellants also argue the trial court erred by not instructing the jury on the lesser included offenses of theft and criminal conversion. Conversion, Ind.Code § 35–43–4–2 (Burns Repl.1979), like theft, Ind.Code § 35–43–4–2 (Burns Repl.1979), is a lesser included offense of robbery, Ind. Code § 35–42–5–1 (Burns Repl.1979). However, the test for determining whether it was error to refuse an instruction on lesser included offenses is whether the lesser included offense is necessarily included as charged, *and* whether the instruction is applicable to the evidence introduced at trial. *Myers v. State*, (1983) Ind., 454 N.E.2d 861; *Rogers v. State*, (1979) 272 Ind. 65, 396 N.E.2d 348. In the present case, the evidence indicated the guilt of Appellants as charged. Butler and Phillips were identified as the perpetrators of the robbery by Kay Leggett and Janet Crownover, bank employees. Leggett testified

that Butler and Phillips, by gunpoint, took money from the teller drawer and exited the bank. Also, witness Janet Crownover corroborated Leggett's testimony and identified Butler and Phillips at trial. It was within the jury's province to believe these witnesses or not. Had they disbelieved them, they would have acquitted Appellants. To have given the tendered instruction would have invited a compromise verdict. *Myers, supra; Harris v. State,* (1977) 266 Ind. 661, 663, 366 N.E.2d 186, 188. There was no trial court error.

## XIV

Appellants Butler and Phillips claim there was insufficient evidence from which the jury could find them guilty of criminal recklessness. They contend there was neither evidence of their driving recklessly nor evidence as to which Appellant fired a gun at Officer Trathen. Appellant Butler additionally claims there was insufficient evidence to support his robbery conviction. He argues the State failed to prove his actions placed the bank tellers in fear.

Where the sufficiency of evidence is challenged, on review we will neither weigh the evidence nor determine the credibility of witnesses but will look only to evidence most favorable to the State, together with all reasonable inferences therefrom. We then determine if there is substantial evidence of probative value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *Jones v. State,* (1985) Ind., 472 N.E.2d 1255. In the instant case, the evidence supporting the criminal recklessness conviction of Butler and Phillips is that on May 27, 1982, Edward Pointer, together with Butler and Phillips, drove to Chesterton State Bank whereupon Butler and Phillips entered with handguns. Butler approached teller Kay Leggett, pointed a gun at her, entered the teller area, and removed approximately $8,835.00 from several teller drawers. Subsequently, Butler and Phillips exited the bank and fled to Pointer's waiting vehicle.

The Bank immediately notified the Portage police of the robbery. Officers Trathen and Heimberg received a radio dispatch concerning the robbery and pursued a vehicle appearing similar to the description of the vehicle which Pointer was driving. The officers unsuccessfully attempted to stop the vehicle. During a high speed chase, Phillips, in the rear passenger seat of the vehicle, fired four shots at Officer Trathen. Subsequently, Pointer drove to the side of the road where he and his cohorts fled from the vehicle. Thereafter, police officers apprehended Pointer, Phillips, and Butler. After Pointer had been advised of his rights, he informed Officer Trathen that Phillips had fired shots at the officer. The dangerous nature of Appellants' crime, the high speed chase and the shooting sufficiently supported Appellants' conviction of criminal recklessness.

Furthermore, with regard to Butler's claim that his robbery conviction was not supported with evidence the bank tellers were in fear, it is well settled that it is not necessary for a victim to testify that he or she was actually put in fear. There need only be evidence from which the jury can infer the victim was put in fear. *Baker v. State,* (1980) 273 Ind. 64, 402 N.E.2d 951. Nonetheless, three bank employees testified not only as to the fear, but the "terror" they felt during the robbery. Furthermore, the court observed the lingering effects of the fear to which the employees were subjected, which was a natural response to an armed robbery. This testimony sufficiently proved the element of fear. Therefore, sufficient evidence was produced at trial to support Butler's conviction of robbery. No error has been raised in this issue.

## XV

Appellants raise several assignments of error pertaining to their sentencing, which are consolidated and dealt with herein. First, Appellants contend the trial court erred by sentencing them beyond the thirty (30) day period provided by Ind.Code § 35–4.1–4–2 (Burns Repl.1979) [recodified at

Ind.Code § 35–38–1–2 (Burns 1985)] and Ind.R.Crim.P. 11. Both laws require the trial court to pronounce sentence within thirty (30) days of judgment unless a justifiable reason exists for delay. The record reveals the verdicts of guilty were rendered on Oct. 6, 1982, and the trial court ordered pre-sentence reports prepared. The court scheduled sentencing for November 4, 1982. On November 18, 1982, the court rescheduled sentencing, without objection from Appellants, for December 2, 1982, because the pre-sentence reports had not been filed. Pre-sentence reports were subsequently filed on December 1, 1982, and the court rendered sentencing December 2, 1982.

▇▇▇ While courts should be prompt in pronouncing sentence after a finding or verdict of guilty, the court need not show exact compliance where defendant or the court needs additional time to complete procedural steps mandated by statute or the practice of the court. *Long v. State*, (1981) Ind., 422 N.E.2d 284. Further, while a defendant does not have the burden of procuring sentencing, when the sentencing date is set and the defendant does not object, he cannot later claim error on appeal. *Murphy v. State*, (1983) Ind.App., 447 N.E.2d 1148. Thus, since the sentencing date of December 2, 1982 had been set on November 18, 1982, to which Appellants could have objected but did not, any error is waived. *Stout v. State*, (1974) 262 Ind. 538, 319 N.E.2d 123, *reh. denied.*

▇▇▇ Next Dudley and Phillips argue the statements of aggravating circumstances set forth by the trial judge were insufficient to support their enhanced sentences. On Appellant Phillips, the trial court found the following aggravating circumstances:

"The Court is going to find as aggravating circumstances first, that any reduced sentence would depreciate the seriousness of this offense; second, that this offense was committed while the Defendant was on bond for a similar offense; third, that it was committed by use of handgun. I mean specifically a handgun. Deadly weapon is part of one of the

charges. Finally, the emotional trauma that was obviously caused to the people at the bank, those of whom testified. It went beyond putting them in fear. It was apparent at the trial they were still suffering from this incident.

Because of those aggravating circumstances, the Court is going to sentence the Defendant, Rodney Phillips, to 20 years on the Class B felony robbery conviction, four years on the criminal recklessness Class D felony. Because of the Defendant's comparative lack of criminal history and because of the injuries that he suffered being apprehended in this, the Court will order those two terms to be run concurrent, not consecutive."

(Record at 2050, 2051).

On Appellant Dudley, the trial court found the following aggravating circumstances:

"Court is going to find as aggravating first, the criminal history of the Defendant. Realizing that two prior felony convictions have been used on the habitual offender proceeding, that still leaves five felony convictions that weren't considered. A three and a half page report of criminal history included in the presentence investigation report. That is extensive enough beyond the two felonies required for habitual, I believe, for the Court to consider that an aggravating circumstance on the underlying felony in this case.

Additionally, as an aggravating circumstance, the Court finds that this offense was committed while the Defendant was on parole. That is based on his own testimony at the trial that he was on parole at the time. I think it is obvious that any reduced sentence would depreciate the seriousness of this offense. I will also find as an aggravating circumstance that the Defendant provided, by the evidence at trial, at least one, if not both of the handguns that went into the bank and, again, making it clear for the record that the Court is finding the furnishing of handguns as the aggravating circumstance. Defendant is also responsible for the emotional trauma suffered

by the persons in the bank, since he was involved in the plan on this bank robbery.

In light of those aggravating circumstances, Court will sentence the Defendant to 20 years on the Class B felony, which he has been convicted, add an additional 30 years to that because of the finding by the jury that Defendant is a habitual offender so Defendant will be sentenced to a term of 50 years."

(Record at 2064–2066).

When the trial court mitigates or aggravates the basic sentence, it must specifically state the reasons for the sentence imposed. *Page v. State*, (1981) 274 Ind. 264, 410 N.E.2d 1304 (remanded for resentencing). The requirement of specificity must not be a mere recital of the conclusory language in the statute enumerating mitigating and aggravating circumstances. Appellants allege the trial court merely recited conclusionary language. However, it is apparent from the quoted contexts of the record that this is not the case and the trial court enumerated the aggravating circumstances with the degree of specificity required by *Page, supra.*

◼◼◼◼ Next, Dudley and Phillips assert the trial court failed to consider mitigating circumstances. However, the authority to determine the length of a sentence is in the trial court. *Bryan v. State*, (1983) Ind., 450 N.E.2d 53. We will reduce the sentence only where it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2. Further, a finding of mitigating factors is discretionary with the trial court. *Bryan, supra; Cornelius v. State*, (1981) Ind., 425 N.E.2d 616. In light of these considerations and the facts before us, we decline to reduce the length of Dudley's and Phillips' sentences.

◼◼◼◼ Next Appellant Dudley argues he was improperly sentenced for aiding a robbery, a Class B felony, rather than a Class C felony. Although the information charging Dudley listed the crime as Aiding a Robbery, a Class B felony, the information states as follows:

"In the Porter Superior Court . . .
knowingly or intentionally aid another person to-wit: Kennis A. Butler, Edward M. Pointer, and Rodney W. Phillips, to commit an offense, to-wit: robbery of the Chesterton State Bank, U.S. highway 20, Portage, Porter County, Indiana then and there being. . . ."

(Record at 44).

In reviewing a charging instrument, the language is construed in light of its common acceptance and understanding. *Williams v. State*, (1979) 271 Ind. 656, 395 N.E.2d 239. An information need only state the crime charged in the language of the statute or in words conveying a similar meaning. *Harwei, Inc. v. State*, (1984) Ind.App., 459 N.E.2d 52, *reh. denied*. An accused has a right to require that the crime alleged against him be charged with sufficient certainty to enable him to anticipate the proof which would be adduced against him and to enable him to meet it. *Id.* Appellant Dudley and his counsel, aware of the surrounding facts of this case, were adequately put on notice that Dudley was being charged with a Class B felony.

◼◼◼ Appellant Dudley argues that the evidence was insufficient to sustain his habitual criminal status by claiming the State failed to prove he accumulated two prior unrelated felony convictions. However, the State introduced several exhibits establishing Dudley had been convicted of robbery in Denver, Colorado on September 26, 1963, and on December 2, 1970, Dudley was convicted of commission of a crime while armed with a deadly weapon in Lake County, Indiana. Therefore, there was sufficient evidence to support the finding that Dudley was an habitual offender.

◼◼◼ Finally, Appellants urge us to find that the cumulative effect of the errors they have alleged denied them a fair trial. However, no reversible or substantial error has been found, nor do we find now that Appellants are entitled to reversal due to the alleged cumulative effect of errors.

However, we note, *sua sponte*, that the trial judge incorrectly imposed an habitual offender sentence. Upon finding Dudley to be an habitual offender, the trial court sentenced Dudley to a term of thirty (30) years on the habitual offender charge. This was improper. Being an habitual offender is not a separate crime for which a defendant is found guilty, but is a status requiring the trial judge to enhance a penalty already given. *Green v. State*, (1984) Ind., 461 N.E.2d 108. Rather than sentence Appellant to an additional term of thirty (30) years, the trial judge should have enhanced the sentence given for aiding a robbery by thirty (30) years, giving a total term of fifty (50) years. Accordingly, we remand this cause to the trial judge for correction of Dudley's sentence pursuant to this opinion. The trial court otherwise is affirmed in all things.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., not participating.