Latroy Darnell RAY,
Petitioner–Appellant,

v.

Jack R. DUCKWORTH, Superintendent,
and Indiana Attorney General,
Respondents–Appellees.

No. 87–2774.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 13, 1989.[*]

Decided Aug. 9, 1989.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and the record.

Latroy Darnell Ray, Michigan City, Ind., pro se.

James G. Clark, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.

BAUER, Chief Judge.

Latroy Ray brings this *pro se* appeal from the district court's order denying his petition for habeas corpus. Ray challenges

the constitutionality of his state court conviction for the murder of Alice Smith. He claims that the trial court erred when it denied his request for a third hearing to determine his competency to stand trial, and when it denied his request to suppress his confession, which he claims was given involuntarily. For the reason outlined below, we affirm.

## I. Factual Background

Alice Smith was found stabbed to death in her Gary, Indiana, home on November 15, 1976. The police had been called to the Smiths' residence at about 1:00 P.M. that day after a neighbor heard the sounds of a breaking window and a woman's scream. While two officers were conducting a subsequent search for witnesses, they came upon Ray as he was walking down the alley behind the victim's house. The officers noticed that Ray's hand was badly cut and wrapped in a bloody bandage. When they asked Ray were he lived, Ray stated that he was staying with the Clarks, who lived two doors away, and that he was willing to accompany them there. While at the Clarks' home, Officer Kremps conducted a routine search of the alley behind the house and found blood covered clothes belonging to Ray in the Clarks' garbage can. At that point, the officers placed Ray under arrest, read him his rights, and took him to the Gary Police station.

At the station, the police again read Ray his rights and then placed him in a room for questioning. After Ray expressed a reluctance to answer any questions, Officer Matan left him alone and proceeded to take the statement of James Clark, Ray's friend and roommate at the Clark home.[1] Officer Matan returned to the room where Ray was being held and informed the suspect of the nature of James' statement and the physical evidence implicating him in the murder. Matan then asked Ray if he still wanted to remain silent. Ray responded by asking to speak with Malard Clark, James' father. Mr. Clark testified that after a brief discussion alone with Ray, the latter confessed to the murder and stated that he was willing to talk to the police about it. At that point, the officers read Ray his rights again and gave him a *Miranda* waiver form to read and sign. Ray did so, and then proceeded to give the police a detailed, three-page statement confessing to the murder of Mrs. Smith.

Prior to trial, Ray's appointed counsel entered a plea of not guilty by reason of insanity. On January 31, 1977, the trial court held a competency hearing in which it heard the testimony of the court-appointed medical witnesses who examined Ray. Based upon the testimony of these witnesses, the court found that Ray was not competent to stand trial. The court therefore committed Ray to the custody of the Indiana Department of Mental Health until he regained his competency and was able to stand trial. Court-appointed psychiatrists at the Norman Beatty Hospital observed and tested Ray for approximately five months, at which time they found that he had regained his competency. The court then conducted a second competency hearing on October 21, 1977, and after hearing the testimony, found that Ray had "sufficient comprehension to understand the nature of the offense with which he is charged and [to] aid iñ the preparation of his defense."

Before proceeding to trial, Ray's substituted counsel filed a second insanity plea and moved to have another competency hearing held. He also moved to suppress Ray's confession on the grounds that it was not given voluntarily. At the March 23, 1978, hearing that followed, the court denied both of these motions. Ray was subsequently tried by a jury, which found

---

1. At trial, James Clark testified that on the morning of the murder, Ray had told him that he was going to kill Alice Smith because "she was in his business." Other testimony revealed that Ray spent a fair amount of time at the Smiths' house, which was burglarized sometime prior to the murder. Alice Smith allegedly ac- cused Ray of committing the burglary, which is why he thought "she was in his business." James also testified that on the morning of the murder, Ray returned to the Clark home after the incident and stated that he had just stabbed Alice "about a million times."

him guilty of first degree murder. He was then sentenced to a term of life imprisonment.

Ray took an appeal of his conviction to the Indiana Supreme Court in which he raised three issues: the trial court erred when it (1) denied his request to conduct a third competency hearing prior to trial, (2) denied his motion to suppress his confession, and (3) admitted his confession without determining whether he had the capacity to intelligently waive his rights. In a published opinion, the Indiana Supreme Court affirmed Ray's conviction. *Ray v. State,* 272 Ind. 111, 396 N.E.2d 373 (Ind. 1979). Ray then filed a habeas petition before the federal district court pursuant to 28 U.S.C. § 2254. In his petition, Ray raised the same three issues as grounds for relief. The district court, after relying extensively upon the factual findings accepted by the Indiana Supreme Court, denied the petition. Ray appealed, and this court denied his subsequent requests for leave to proceed *in forma pauperis* and for appointed counsel. In his *pro se* brief, Ray raises only two of the three issues advanced below: he contends that he was tried in violation of his rights to due process when the trial court denied his motion to conduct a third competency hearing. Ray also contends that the trial court erred when it admitted his confession, which he claims was given involuntarily because he was coerced into waiving his rights under *Miranda.*

## II. Analysis

■ A defendant who is tried and convicted while legally incompetent is denied his or her due process right to a fair trial. *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Consequently, the Supreme Court has held that a defendant's right to procedural due process may be violated when a state fails to observe its statutorily prescribed procedures aimed at testing whether the defendant is competent.[2] *Drope,* 420 U.S. at 172, 95 S.Ct. at 904. Under the portion of the Indiana Criminal Code at issue, a defendant's right not to be tried while incompetent is no less "jealously guarded" than it is in Illinois. *See Drope,* 420 U.S. at 172, 95 S.Ct. at 904 (referring to the statutory procedures in Illinois which required a hearing if evidence raised a *"bona fide* doubt as to defendant's competency"). An Indiana trial court is required to hold a competency hearing at any time before submitting the case to the jury if it has "reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense." IC 35–36–3–1 (1986).[3]

■ Since the present petition calls into question the state trial court's findings after conducting a hearing in accordance with this statute, our standard of review of the court's findings is limited by the "presumption of correctness" mandated by 28

**2.** The due process test for assessing the defendant's competency to stand trial is whether he or she "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *United States ex rel. Mireles v. Greer,* 736 F.2d 1160, 1165 (7th Cir.1984) (quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam)); *Estock v. Lane,* 842 F.2d 184, 186–87 (7th Cir.1988) (per curiam).

**3.** In pertinent part, IC 35–36–3–1 provides:
(a) If at any time before the final submission of any criminal case to the court or to the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and

assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has the ability....
(b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of his defense may be introduced. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of his defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it shall delay or continue the trial and order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution.

U.S.C. § 2254(d).[4] *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam with three Justices dissenting) (Section 2254(d) is applicable to a state trial court's factual findings underlying its determination that a defendant is competent to stand trial). The question before us then is whether the trial court's denial of Ray's request for a third competency hearing finds fair support in the record. *Id.* at 117, 103 S.Ct. at 2264 (citing § 2254(d)(8)). *See also U.S. ex rel. Bilyew v. Franzen,* 842 F.2d 189, 192 (7th Cir. 1988). Such an inquiry often requires an assessment of the "varying opinions trained psychiatrists can entertain on the same facts." *Greer,* 736 F.2d at 1165 (citing *Drope,* 420 U.S. at 180, 95 S.Ct. at 908). Because of the potential for divergent and often conflicting opinions on the issue of the defendant's competency, we must be careful to give due regard to the trial court's superior ability to draw the appropriate inferences from its observation of the defendant and expert witnesses, as well as the examination reports before it. *Id. See also Maggio,* 462 U.S. at 117–18, 103 S.Ct. at 2264–65.

■■■ In this case, the trial court was required to make just such a choice between the conflicting opinions regarding Ray's competency. At the March 23, 1978, hearing on Ray's request for a third competency hearing, defense counsel filed an affidavit in which he claimed that Ray would not answer any of his questions about the incident. Defense counsel thus contended that Ray was incompetent to stand trial, citing the earlier opinion of Dr. Carpenter. The trial court responded by reviewing the examination opinions of record. The court then reaffirmed its previous conclusion and held that defense counsel had not raised reasonable grounds to believe that Ray

was incompetent to stand trial. The court noted that it was making a credibility determination based on the opinion evidence before it, and that it was crediting the experts who found that Ray was malingering:

> They did a June examination on him. They did a September examination on him. In June they thought it was malingering, he was feigning psychiatric illness and not at all characteristic of person [sic] who has true psychotic thought process.... Just the fact that he alleges that he can not remember the facts around which this offense arose does not on its face give the court or in the form of an affidavit by counsel does not give the court reasonable grounds to have the defendant reexamined again.

> \* \* \* \* \* \*

> Dr. Keating said and I quote, 'the court should be aware that he,' referring to the defendant, 'probably will continue to feign psychiatric illness and do so quite convincingly in order to escape responsibility.' In any case he has been hospitalized on two separate occasions. He has been found competent to stand trial. Trial will not be delayed with suggestions that he may be presently incompetent to stand trial. In absence of any reasonable grounds to believe that he may be incompetent he is now competent.

The greater weight of the subsequent testimony of the court-appointed physicians at trial also revealed that Ray was "malingering." Although Ray is able to point to the testimony of Dr. Carpenter, who stated that he believed Ray was suffering from psychosis at the time of the incident and during their subsequent interview sessions prior to trial, Dr. Carpenter's conclusion was based largely on Ray's inability or

---

**4.** The relevant portion of 28 U.S.C. § 2254(d) provides that:

> In any proceeding instituted in a Federal court by an application for a writ of habeas corpus ... a determination after a hearing on the merits of a factual issue, made by a State court ... shall be presumed to be correct, unless the applicant shall establish or it shall

otherwise appear, or the respondent shall admit—

> (8) part of the record of the State court proceeding in which the determination of such factual issue was made, ... the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

unwillingness to answer any questions about the crime. On the other hand, Dr. Hogel testified that it was quite unlikely that Ray suffered from psychosis. Dr. Hogel did note that while it was possible that Ray could have suffered from a psychotic episode after the incident, his examinations of Ray lead him to believe that the defendant had recovered from any such episode and was both sane at the time of the murder and competent to stand trial. In point of fact, Dr. Hogel believed that Ray was not being "truthful" in claiming that he could not recall anything about the murder. He stressed that Ray's coherent and detailed confession given to the police on the day of the incident belies any such claim to the contrary. In any event, he pointed out that "psychosis does not operate memory wise in this fashion." Similarly, Dr. Gaines testified that the discrepancies in Ray's explanations about his hallucinations and his answers to her questions convinced her that the defendant "was in fact malingering, rather than purely mentally ill." The foregoing testimony provides further support for the trial court's conclusion that Ray did not establish "reasonable grounds for believing" that he did not understand the nature of the proceedings or could not assist in the preparation of his defense.[5] Accordingly, we conclude that the trial court was not required to hold a third competency hearing as a matter of due process.

■ Ray's second contention on appeal is that his confession was given involuntarily because he was coerced into waiving his *Miranda* rights. The coercion, he argues, stems from the fact that the interrogating officers robbed him of his free will by telling him about the nature of the evidence implicating him in the crime. Before addressing the merits of this argument, an explanation of our standard of review for such a claim under § 2254 is in order. In *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985), the Supreme Court reaffirmed that the ultimate question of whether a confession was given voluntarily under the totality of the circumstances test—that is, in a manner that is compatible with the requirements of the Constitution—is a question of law requiring independent federal determination.[6] For the purposes of § 2254 then, the "presumption of correctness" mandated by the federal habeas statute is not applicable to the state court's determination on the ultimate question of whether a defendant's confession was given voluntarily. On the other hand:

> subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law is clear that state court findings on such matters are conclusive on the habeas court if fairly supported in the record and if other circumstances enumerated in § 2254(d) are inapplicable.

*Id.* at 117.

In *Perri v. Director*, 817 F.2d 448 (7th Cir.1987), this court held that the issue of whether the defendant knowingly and intel-

---

**5.** Ray contends that because all of the reports that were relied upon by the trial court were not before the Indiana Supreme Court when it affirmed his conviction, *see Ray v. State*, 272 Ind. at 113, 396 N.E.2d at 374, and are not now part of the record on appeal, the trial court's denial of his request for a third competency hearing is not a determination which is "fairly supported by the record" according to the requirements of 28 U.S.C. § 2254(d)(8). We disagree. The transcripts from the hearing on Ray's motion are part of the record before us, and they fully reflect the trial court's evidentiary basis for its conclusion. We believe that the trial court's determination has more than fair support in the record. *Maggio*, 462 U.S. at 117–18, 103 S.Ct. at 2264–65.

**6.** An issue which we need not address in this case is our standard for appellate review of the district court's independent determination of the voluntariness of a defendant's confession under the Due Process Clause of the Fourteenth Amendment. In *United States v. Hawkins*, 823 F.2d 1020, 1022–23 (7th Cir.1987), we held that the district court's determination on this issue will be independently reviewed on appeal. In accord with this conclusion is *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253 (7th Cir.1988). *But cf. Sotelo*, 850 F.2d at 1253 (Easterbrook, J., concurring).

ligently waived his or her rights under *Miranda* is one of the subsidiary factual questions alluded to in *Miller v. Fenton.* We thus held that a state court's determination on this issue, if supported by the record, is entitled to the presumption of correctness under § 2254. *Id.* at 106 S.Ct. at 450–51. *But see United States v. Yunis,* 859 F.2d 953, 957–58 (D.C.Cir.1988). Similarly, in *Bryan v. Warden,* 820 F.2d 217 (7th Cir.1987), we held that the determination of whether a defendant voluntarily waived his or her *Miranda* rights—an inquiry more akin to the determination of whether those rights were waived knowingly and intelligently and distinct from the ultimate question of whether the defendant's confession was given voluntarily[7]—was also "a subsidiary factual inquiry best made in the state courts." *Id.* at 219.

 Having reviewed the parameters of our standard of review, we return to the merits of Ray's contention that he was "forced" or "coerced" into confessing against his will. There is clearly no merit to Ray's claim that he was robbed of his free will by the mounting pressures of the incriminating evidence the police had gathered. An interrogating officer's act of merely informing the accused of the nature of the evidence implicating him, without more, does not constitute coercive police conduct. *Woods v. Clusen,* 794 F.2d 293 (7th Cir.1986). Yet Ray offers no more than this. Nor does he attempt to challenge the findings of the Indiana Supreme Court on the waiver issue; findings which we must therefore accord a presumption of correctness:

> The testimony at the suppression hearing revealed that Officer Mat[a]n approached appellant at the jail, advised him of his *Miranda* rights, and asked if he knew the charges and if he wanted to talk about the incident. Ray stated that he didn't know anything about it. Officer Mat[a]n then went into another room, where he talked to James Clark in the presence of his father, Malard Clark, for about an hour and a half. Mat[a]n returned to the room in which Ray was sitting and advised him that the police had the statement of Clark and other substantial evidence against him implicating him in the incident. Mat[a]n then asked Ray if he wanted to talk or remain silent. At that time, Ray indicated that he would talk, but first asked if he could speak to Malard Clark. Ray was allowed to talk to Clark. He told Clark that he did commit the crime and that he wanted to talk to police about it. Mr. Clark advised Officer Mat[a]n that Ray wished to speak with police, and Officer Mat[a]n returned to the room in which Ray was sitting. He fully explained the *Miranda* rights to Ray. Ray indicated that he understood his rights and signed the waiver form, after which he gave the confession in question. After giving the confession, Mat[a]n again went over the *Miranda* rights with Ray. He [Ray] indicated again that he understood them and again reaffirmed his waiver.
>
> At no time did Ray state that he wished to stop the interrogation or talk to an attorney before continuing. There was no evidence of threats or coercion by the police to induce Ray to make the statements.

*Ray v. State,* 272 Ind. at 114–15, 396 N.E.2d at 375. Our own review of the record supports the accuracy of these findings. For example, Malard Clark's trial testimony about the events at the police station fully supports the testimony of Officer Matan. In point of fact, Mr. Clark testified that he was in the interrogation room during a portion of Ray's confession and did not witness any activity that might be considered coercive. In the face of such

---

7. In *Bryan,* we noted the central distinction between these two determinations:

> As a reviewing court, our inquiry as to whether a defendant has been [involuntarily] forced to confess is best gleaned from the totality of the circumstances. However, this differs from the discrete inquiry of whether the waiver is voluntary. The former requires a determination of whether the process was fundamentally fair—a uniquely federal concern— while the latter concerns only a factual inquiry.

*Bryan,* 820 F.2d at 220 (citations omitted).

testimony, we are unable to find any evidence that Ray "was 'threatened, tricked, or cajoled into this waiver.'" *Connecticut v. Barrett*, 479 U.S. 523, 527, 107 S.Ct. 828, 831, 93 L.Ed.2d 920 (1987) (citing *Miranda v. Arizona*, 384 U.S. 436, 476, 86 S.Ct. 1602, 1628–29, 16 L.Ed.2d 694 (1966)).

Accordingly, the district court's decision denying Ray's petition for habeas corpus is hereby AFFIRMED.