Kennis BUTLER, Petitioner,

v.

Jack R. DUCKWORTH, and Indiana
Attorney General, Respondents.

Civ. No. S88–525.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 7, 1989.

Kathryn B. O'Neall, Remington, Ind., for petitioner.

Wayne E. Uhl, Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On August 19, 1988, the petitioner, Kennis Butler, appearing *pro se,* filed a petition seeking habeas corpus relief under 28 U.S.C. § 2254. The court subsequently appointed counsel for the petitioner. The respondents have filed their return and the state court record. The case is now ripe for ruling.

## I. BACKGROUND

In 1982, the petitioner was convicted of robbery, a Class B felony[1], and criminal recklessness, a Class D felony[2], by a jury in the Porter County Superior Court in Indiana. He was tried with two codefendants, Rodney Phillips and McKinley Dudley. Phillips also was convicted of robbery, a Class B felony, and criminal recklessness, a Class D felony. Dudley was convicted of aiding a robbery, a Class B felony, and was further found to be an habitual offender. Two additional accomplices, Edward Pointer and Cecil Lewis, cooperated with the prosecution. Edward Pointer pled guilty and received a reduced sentence in exchange for his testimony regarding the crimes. Cecil Lewis was granted immunity in exchange for his testimony regarding the crimes. The petitioner, Phillips, and Dudley filed a joint appeal and the Supreme Court of Indiana unanimously affirmed their convictions in *Dudley v. State,* 480 N.E.2d 881 (Ind.1985).

The state's evidence at trial showed that on May 27, 1982, the petitioner, Dudley, Phillips, Pointer, and Lewis drove to Portage, Indiana to commit a bank robbery at the Chesterton State Bank. The petitioner, Phillips and Pointer were in the getaway car, a blue Oldsmobile. Pointer was driving. Dudley's girlfriend, Gerri Peters, owned the Oldsmobile. Dudley and Lewis followed in the switch getaway car, a green Cadillac. Dudley was driving, and he owned the Cadillac.

Once in Portage, the petitioner, Phillips and Pointer drove the Oldsmobile to the bank while Dudley and Lewis drove the

1. At the time of the petitioner's offense, the Indiana robbery statute read:
   **35–42–5–1 Robbery**
   Sec. 1. A person who knowingly or intentionally takes property from another person or from the presence of another person:
   (1) by using or threatening the use of force on any person; or
   (2) by putting any person in fear;
   commits robbery, a Class C felony. *However, the offense is a Class B felony if it is committed while armed with a deadly weapon,* and a Class A felony if it results in either bodily injury or serious bodily injury to any other person.
   Ind.Code Ann. § 35–42–5–1 (West 1986) (emphasis added).

2. At the time of the petitioner's offense, the Indiana criminal recklessness statute read:

**35–42–2–2 Criminal recklessness**
   Sec. 2. (a) a person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a Class B misdemeanor. However, the offense is a:
   (1) Class A misdemeanor if the conduct includes the use of a vehicle; or
   (2) *Class D felony if it is committed while armed with a deadly weapon.*
   (b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness, a Class D felony. However, the offense is a Class C felony if committed by means of a deadly weapon.
   Ind.Code Ann. § 35–42–2–2 (West 1986) (emphasis added).

Cadillac to the prearranged switch point. When arriving at the switch point, Dudley decided that he did not like the location. Dudley and Lewis then left the switch point and drove to Gary, Indiana.

Meanwhile, the petitioner, Phillips and Pointer arrived at the bank. The petitioner and Phillips entered the bank. Pointer remained in the Oldsmobile to facilitate their escape. In the bank, the petitioner approached a bank teller, Kay Leggett. He pulled out a handgun and proceeded to go behind the counter. He removed approximately $8,835.00. Phillips, meanwhile, was holding a handgun and was pacing back and forth in the lobby. The petitioner and Phillips then fled from the bank and escaped in the Oldsmobile. Pointer was driving. The petitioner was in the front passenger seat, and Phillips was in the back seat.

The state's evidence further showed that the bank immediately notified the Portage Police Department about the robbery. Sergeant Fred Trathen received a radio dispatch describing the getaway car. Sergeant Trathen located an Oldsmobile which fit the description and a high-speed chase then ensued on Interstate 94. Officer Charles Heimberg, in another police vehicle, joined the pursuit of the Oldsmobile. During the chase, the individual in the back seat, Phillips, fired gunshots at the pursuing police.

The chase finally ended when Pointer stopped the Oldsmobile on the side of the road. The petitioner, Phillips and Pointer then fled from the vehicle and eventually were apprehended. Phillips was shot by the police while he was fleeing. The police recovered the stolen money, which included $500.00 of bait money.

## II. DISCUSSION

### A. Threat Testimony

The petitioner first contends that his due process rights were violated when the state trial court allowed a state's witness to testify to receiving anonymous phone threats the night before the trial. At trial, Edward Pointer, the driver of the Oldsmobile and a state's witness, testified that he received anonymous phone threats the night before the trial. All defendants moved for a mistrial and to strike the testimony contending that the testimony was prejudicial. The prosecution argued that the threat testimony was admissible in order to explain the nervousness of Pointer. The state trial court agreed with the prosecution. Consequently, the motions for mistrial and to strike the testimony were denied.

McKinley Dudley, the petitioner's codefendant at his state trial, raised the threat testimony issue in a habeas corpus petition filed with this court. On appeal from this court, the Seventh Circuit held that the due process rights of Dudley were violated when the state trial court admitted the threat testimony into evidence. *Dudley v. Duckworth*, 854 F.2d 967 (7th Cir.1988) (Coffey, J., dissenting), *cert. denied*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). The court concluded that "[t]he record strongly suggests that the evidence of threats was intended more to prejudice the *defendants* ... than to explain away any nervousness of the witness." *Id.* at 972 (emphasis added). The court found that the error was so prejudicial that it resulted in a denial of fundamental fairness in violation of the Fourteenth Amendment of the Constitution of the United States. *Id.*

In *Dudley*, the Seventh Circuit also concluded that the constitutional error, as applied to McKinley Dudley, was not harmless beyond a reasonable doubt. *Id.* The court reasoned that "[t]he evidence of [Dudley's] guilt was impressive but not overwhelming." *Id.* (citing *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1020 (7th Cir.1987)). The evidence against Dudley was characterized by the court as follows:

In a trial that lasted more than two weeks and involved approximately thirty-three witnesses, only two witnesses, Lewis and Pointer, implicated [Dudley] in the robbery. Lewis and Pointer, admitted accomplices testifying in exchange for immunity or dismissal of charges, are inherently dubious witnesses. The

strength of their sometimes conflicting testimony does not approach the level required to render this constitutional error harmless.

*Id.* (footnote omitted). The court further emphasized that the constitutional error could not be considered harmless since it totally undermined Dudley's alibi defense. *Id.* Testifying at trial, Dudley denied knowledge of the bank robbery and claimed he was traveling with Cecil Lewis on May 27, 1982, to fix a friend's car.

In a lengthy dissent, Judge Coffey challenged the majority's conclusion that the evidence was prejudicial. He then argued that even if the admission of the threat testimony was constitutional error, the error was harmless beyond a reasonable doubt. He reasoned that the evidence against Dudley was overwhelming:

> Beyond doubt the evidence to convict Dudley was "overwhelming," *Savory,* 832 F.2d at 1020, and Pointer's threat testimony did not contribute to the jury's decision. The majority, instead, chooses to downplay the plethora of evidence, stating that "[t]he evidence of the petitioner's guilt was impressive but not overwhelming." Dudley, in organizing the bank robbery, participated in several discussions of the robbery plan prior to the actual crime, including the one that took place in his own home. Secondly, he supplied the necessities, the cars and guns, to facilitate the plan and even went so far as to check out the operating capabilities of one of the co-defendant's guns prior to the bank robbery. He was present when the parties agreed to the division of the robbery loot equally. He drove with Lewis to the planned switching point where the robbers were going to change cars after the bank robbery. He told his girlfriend that he let "a friend" use her car when in fact he planned for its use in facilitating the robbery. And finally, he offers no valid explanation for his presence in Portage on the day the armed robbery took place. I am convinced, as was the jury, the Indiana Supreme Court, and the district

court, that the evidence of Dudley's guilt was "overwhelming."

*Id.* at 979 (Coffey, J., dissenting opinion).

■ Clearly a constitutional error occurred at the petitioner's state trial. The error applies with equal force to the petitioner. *See id.* at 972 ("evidence of threats was intended more to prejudice the *defendants"*) (emphasis added). Now the court must determine whether the constitutional error, as applied to this petitioner, was harmless beyond a reasonable doubt.

■ Constitutional errors in a criminal trial are grounds for reversal unless they are "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The petitioner is entitled to a fair trial not a perfect one. *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). *See also Sulie v. Duckworth,* 864 F.2d 1348, 1356 (7th Cir. 1988), *cert. denied,* 493 U.S. 828, 110 S.Ct. 93, 107 L.Ed.2d 58, 58 U.S.L.W. 3214 (1989); *Ortega v. O'Leary,* 843 F.2d 258, 262 (7th Cir.1988), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). The harmless error rule "promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436. *See also United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1017 (7th Cir.1988).

■ The initial inquiry for the court then "is whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts." *Burns v. Clusen,* 798 F.2d 931, 943 (7th Cir.1986) (citing *Chapman v. California,* 386 U.S. 18, 26, 87 S.Ct. 824, 829 (1967)). The court must determine " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *United States ex rel. Ross v. Fike,* 534 F.2d 731, 734 (7th Cir.1976) (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)). This circuit generally requires other evidence of guilt to be "overwhelming" before conclud-

ing a constitutional error was harmless. *See Sulie*, 864 F.2d at 1359; *Smith v. Fairman*, 862 F.2d 630, 639 (7th Cir.1988), cert. denied, 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1020 (7th Cir.1987); *Burns*, 798 F.2d at 943; *United States v. Shue*, 766 F.2d 1122, 1133 (7th Cir.1985). But in making this determination the court is not to engage in a reweighing of the evidence to determine the impact on the jury's verdict. *Fencl v. Abrahamson*, 841 F.2d 760, 769 (7th Cir. 1988). Rather, the court must examine all the evidence to determine the impact of the objectionable evidence on the jury's verdict. *Id.*

In the present case, the evidence supporting the bank robbery conviction is "overwhelming." *See Sulie*, 864 F.2d at 1359. Kay Leggett, a bank teller employed by the bank for three years, positively identified the petitioner at trial as the bank robber who pointed the gun at her and removed the money from behind the counter. Leggett also identified the petitioner at a show-up after the robbery and in bank photographs taken of the robbery. The bank photographs are damaging evidence in that they show the petitioner carrying a handgun. Possession of a handgun was an element of the crime since the petitioner was charged with committing a bank robbery while armed with a deadly weapon.

Leggett's testimony is corroborated by other witnesses. Janet Crownover, a bank teller employed by the bank for sixteen years, positively identified the petitioner as the bank robber who came behind the tellers' cage and removed the money. She also testified that the petitioner was carrying a handgun. Kent Mishler, a loan officer for the bank, also positively identified the petitioner as the bank robber who removed the money and pointed the gun at Leggett. Police officers further testified that the stolen money was recovered from the petitioner, Phillips and Pointer. The stolen money included $500 of "bait money" from the bank. Finally, the most devastating evidence is the petitioner's own confession that he participated in the bank robbery.[3]

With respect to the bank robbery conviction, there are two distinguishing factors between the evidence of guilt against McKinley Dudley and the evidence of guilt against this petitioner. First, the state's evidence of guilt against McKinley Dudley primarily rested upon the testimony of two accomplices—Edward Pointer and Cecil Lewis. The Seventh Circuit found such evidence to be "inherently dubious" and thereby insufficient to render the constitutional error harmless. *Dudley*, 854 F.2d at 972. Conversely, the evidence of guilt against the petitioner primarily rests upon the testimony of nonparticipants such as bank employees and police officers. Unlike Pointer and Lewis, these witnesses have nothing to gain or lose by their testimony.

Secondly, McKinley Dudley raised an alibi defense to the bank robbery charges against him. He insisted throughout the trial that he knew nothing about the planned bank robbery and that he was driving with Cecil Lewis on May 27, 1982, to fix a friend's car. Given that Dudley was a nonactive participant in the bank robbery, the threat testimony "totally undermine[d] the defense offered" by him. *Id.* The petitioner, on the contrary, did not raise an alibi defense. As a result, the threat testimony did not undermine any defense offered by him.

Clearly the evidence is overwhelming that the petitioner actively participated in the bank robbery while armed with a deadly weapon. In light of the overwhelming evidence, there is no "reasonable possibility" that the admission of the threat testimony had any effect on the bank robbery verdict. *See Fahy*, 375 U.S. at 86, 84 S.Ct. at 230.

The evidence of guilt also is overwhelming with respect to the criminal recklessness conviction. Sergeant Fred Trathen, employed as a police officer by the City of

---

**3.** The petitioner challenges the admission of his confession to the police. As will be discussed in section D, *infra,* the state trial court did not violate the petitioner's constitutional rights by admitting his confession.

Portage for thirteen years, testified that he pursued a blue Oldsmobile fitting the description of the getaway car. The pursuit turned into a high-speed chase on Interstate 94 with the Oldsmobile weaving in and out of heavy traffic. The individual in the back seat of the Oldsmobile then fired four gunshots at Sergeant Trathen from the right rear passenger window. The Oldsmobile then turned onto an on-ramp and headed into the opposite direction of traffic before finally coming to a stop on the side of the road. The petitioner, Pointer and Phillips finally were apprehended after fleeing on foot from the Oldsmobile. Officer Charles Heimberg, employed by the City of Portage for fifteen years, corroborated Sergeant Trathen's testimony regarding the high-speed chase and the gunfire. During the chase, Officer Heimberg had been following Sergeant Trathen in close pursuit.

The testimony of the police officers also is corroborated by Officer Frank Arreola, a radio dispatcher, who testified that Sergeant Trathen communicated over the radio that he, Trathen, was being shot at by someone in the Oldsmobile. Edward Pointer, the driver of the Oldsmobile, further substantiated the evidence of gunfire when he testified at trial that he heard gunshots coming from his car. In post-*Miranda* statements to the police, Pointer stated that Phillips was shooting at the police. At trial, however, Pointer changed his story and testified that he did not know who was shooting at the police, although he admitted that he saw Phillips in the back seat holding a gun.

Detective Keith Burden along with Sergeant Trathen testified that they found two guns in the Oldsmobile. The first gun, located in the front seat, was fully loaded. The second gun, located in the back seat, contained four spent cartridges and one loaded shell. Another gun was found on the side of the road next to the Oldsmobile, and it contained one spent cartridge and five loaded shells. Fingerprints from the guns were inconclusive. Although the evidence that the gun in the back seat had been fired at some point in time is merely

circumstantial, this evidence, when added with the police officers' testimony, further substantiates the state's case that someone in the Oldsmobile was in fact shooting at the police.

The petitioner in his confession to the police admitted that he was sitting in the front passenger seat of the Oldsmobile but he denied firing the gunshots. Any dispute regarding *who* fired the gunshots is immaterial at this point. The issue is not who was shooting at the police but rather was a gun in fact fired at the police. The jury was instructed regarding accomplice liability under Indiana law. *See, e.g., Moredock v. State,* 514 N.E.2d 1247 (Ind.1987); *Parks v. State,* 455 N.E.2d 904 (Ind.1983). The jury returned verdicts finding that both the petitioner and Rodney Phillips, the back seat passenger in the Oldsmobile, were guilty of creating a substantial risk of injury while armed with a deadly weapon. *See* Ind.Code Ann. § 35–42–2–2(a)(2) (West 1986) (criminal recklessness statute). Whether the jury found that the petitioner was the principal, that is, the person shooting at the police, or the accessory is not a matter for this court to decide. Instead, the question for this court is whether the evidence is overwhelming that someone did indeed shoot at the police from the Oldsmobile.

Although the testimony of Sergeant Trathen, Officer Heimberg, and Edward Pointer standing alone might not be sufficiently overwhelming, the testimony of these witnesses, when taken together, demonstrates overwhelmingly that someone in the Oldsmobile was shooting at the police. The evidence against the petitioner does not primarily rest upon circumstantial evidence which in this circuit is not sufficient to render a constitutional error harmless. *See United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1302 (7th Cir.1985). Rather, the record reflects "substantial direct evidence" against the petitioner. *See Dortch v. O'Leary,* 863 F.2d 1337, 1345 (7th Cir. 1988), *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989). Sergeant Trathen and Officer Heimberg, officers with a combined experience of 28 years with the same police force, were eye-

witnesses to the gunfire coming from the Oldsmobile. There appears to be no probative evidence in the record which challenges their credibility. Their eyewitness accounts of the high-speed chase are in stark contrast to the unsubstantiated testimony of Pointer and Lewis against McKinley Dudley. *See Dudley*, 854 F.2d at 972. Furthermore, Pointer's testimony that he heard gunshots coming from his car (the Oldsmobile) is fully corroborated by the police officers' testimony and therefore is more reliable than his unsubstantiated testimony against McKinley Dudley.

The evidence is overwhelming that the petitioner is guilty of criminal recklessness either as a principal or an accessory. Consequently, there is no "reasonable possibility" that the admission of the threat testimony had any effect on the criminal recklessness verdict. *See Fahy*, 375 U.S. at 86, 84 S.Ct. at 230.

In light of the Seventh Circuit's decision in *Dudley v. Duckworth*, there is no doubt that the state trial court committed constitutional error when it admitted the threat testimony into evidence. The court, nonetheless, has thoroughly reviewed the evidence underlying both the bank robbery and criminal recklessness convictions. In light of the overwhelming evidence against the petitioner, the court concludes that admission of the threat testimony, as applied to the petitioner, was harmless beyond a reasonable doubt.

### B. Bad Acts Evidence

The petitioner next contends that a comment made by Cecil Lewis during Lewis' testimony was so prejudicial that it rendered his trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment. At the petitioner's trial, Lewis testified that the bank robbery was first discussed in his presence when Lewis and the petitioner were going out to rob a liquor store. All defendants immediately moved for a mistrial contending that the comment was prejudicial. The state trial judge denied the motion but struck Lewis' comment and admonished the jury. The Supreme Court of Indiana held that whatever prejudice may have resulted from Lewis' testimony was cured by the state trial court's admonishment of the jury. *Dudley*, 480 N.E.2d at 891.

Clearly the state trial judge and the Supreme Court of Indiana recognized that Lewis' comment was prejudicial. Assuming the bad acts evidence was inadmissible, the court finds that the petitioner's trial was not rendered fundamentally unfair for two reasons. First, proper instructions will usually suffice to correct damage from any erroneously admitted evidence. *Cramer v. Fahner*, 683 F.2d 1376, 1384 (7th Cir.1982), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). *See also United States v. Jordan*, 722 F.2d 353, 357 (7th Cir.1983). Here, the state trial judge promptly struck Lewis' comment from the evidence and admonished the jury to disregard the same. Secondly, a habeas court should not invalidate a state conviction unless the erroneously admitted evidence so tainted the trial thereby rendering it fundamentally unfair. *Cramer*, 683 F.2d at 1385. Lewis' comment regarding the liquor robbery was an isolated incident in a lengthy trial which was handled appropriately by the state trial judge. As previously discussed, the evidence against the petitioner on both convictions is overwhelming. As a result, there is no "reasonable possibility" that Lewis' comment might have contributed to the petitioner's bank robbery and criminal recklessness convictions. *See Fahy*, 375 U.S. at 86, 84 S.Ct. at 230. The court thus concludes that the petitioner was not denied a fair trial when the bad acts evidence was erroneously admitted.

### C. Denial of Motion for Psychiatric Examination

The petitioner next alleges that he was tried and convicted while legally incompetent in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, he argues that the state trial court erred in denying his motion for psychiatric examination. In Indiana, a trial court is required to hold a competency hearing if there are "reasonable grounds" to believe the defendant is incompetent to stand trial. Ind.Code Ann. § 35–36–3–1 (West 1986). If there are "reasonable

grounds" to believe the defendant is incompetent, the court then appoints two psychiatrists to examine the defendant. The psychiatrists then report their opinions to the court at the competency hearing. *Id.*

It is a violation of due process to try and convict a defendant who is legally incompetent. *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Here, the state trial court held a hearing on the petitioner's motion for psychiatric examination. The petitioner's only witness at the hearing was his mother. His mother testified that there was a history of mental problems in the family. She also testified that nine years before the trial she had taken the petitioner for psychiatric counseling. Based on the mother's testimony, the state trial court found that there did not exist "reasonable grounds" to believe that a competency hearing was necessary. This court's review of the state trial court's findings is limited by the presumption of correctness under 28 U.S.C. § 2254(d). *Ray v. Duckworth,* 881 F.2d 512, 515–16 (7th Cir.1989). The state trial court's denial of the petitioner's motion for psychiatric examination certainly finds support in the record. The petitioner's evidence of his incompetency at the time of his trial is weak at best. The court thus concludes that the petitioner was not tried while legally incompetent. Accordingly, the state trial court did not violate the petitioner's due process rights when it denied his motion for psychiatric examination.

### D. Confession

The petitioner finally alleges that the state trial court erred when it denied his motion to suppress his confession to the police. He argues that his waiver of *Miranda* rights and his confession to the police were involuntary. At the suppression hearing, the evidence disclosed that after the petitioner was apprehended, he was transported to the police station where he was advised of his *Miranda* rights by Officer Roger Kiser. The petitioner stated that he understood his rights but he refused to sign a waiver of rights form. Officer Kiser then commenced booking procedures. Officer Kiser and Detective Keith Burden testified that they ceased all interrogation after the petitioner refused to sign the waiver of rights form. The petitioner, on the other hand, testified that the police continued to question him after he refused to sign the waiver form. However, there is no dispute that shortly after refusing to waive his rights, the petitioner approached the police while they were booking him and admitted that he participated in the bank robbery. Based upon this evidence, the state trial court denied the petitioner's motion to suppress finding the confession voluntary. The Supreme Court of Indiana affirmed. *Dudley,* 480 N.E.2d at 899.

■ A state trial court's finding that a defendant voluntarily waived his *Miranda* rights is a factual determination to which federal courts may defer under 28 U.S.C. § 2254(d). *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217, 219 (7th Cir.1987), *cert. denied,* 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987). A state trial court is in the best position to look at the factual circumstances surrounding a waiver and to weigh the conflicting testimony. *Id.; see also Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985). On the other hand, the voluntariness of a confession is a question of law requiring independent federal determination. *Miller,* 474 U.S. at 112, 106 S.Ct. at 450; *Ray,* 881 F.2d at 517.

■ The state trial court did not make an explicit finding that the petitioner voluntarily waived his *Miranda* rights. The Supreme Court of Indiana did conclude that "[a] review of the totality of circumstances supports the trial court's finding that Butler's *waiver of rights* and statement to police were voluntary." *Dudley,* 480 N.E.2d at 899 (emphasis added). The Supreme Court's finding is supported by the record since it is not unreasonable to conclude that the petitioner voluntarily waived his *Miranda* rights when he approached the police during booking and confessed to them. The fact that the petitioner did not expressly waive his rights when he refused

to sign the waiver form is not fatal to a finding that he voluntarily waived his rights. *See North Carolina v. Butler*, 441 U.S. 369, 373–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979). The petitioner's waiver can be inferred from his words and actions. *Id.; see also Gorham v. Franzen*, 760 F.2d 786, 795 (7th Cir.1985), *cert. denied*, 474 U.S. 922, 106 S.Ct. 255, 88 L.Ed.2d 262 (1985). Here, the petitioner's confession was an implicit waiver of his *Miranda* rights. Furthermore, two police officers testified that the petitioner was not interrogated after he refused to waive his rights. Hence, the petitioner's subsequent waiver was voluntary and was not prompted by persistent police interrogation. Nor did the police interrogate the petitioner when they commenced booking procedures. *See United States v. Edwards*, 885 F.2d 377, 385 (7th Cir.1989). Although the petitioner testified that the police continued to interrogate him after he refused to waive his rights, the state trial court obviously resolved the conflicting testimony in favor of the police. As previously discussed, this court cannot reweigh that conflicting testimony on collateral review. *See Bryan*, 820 F.2d at 219.

The court has thoroughly examined the record and concludes that the finding of voluntary waiver is reasonably supported by the record. Furthermore, upon an independent examination of the state court record, the court finds no evidence of police coercion to suggest that the petitioner's confession was in fact involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). As a result, the court concludes that the state trial court did not commit constitutional error when it admitted the petitioner's confession into evidence.

### III. CONCLUSION

This court's initial impression was that the result in this case was predetermined by the decision of the Court of Appeals in *Dudley v. Duckworth*. Such initial impression is perfectly understandable. The court, however, is obligated to give careful and individual consideration to this case. The court has made a full, comparative examination between the entire state court record as it pertains to McKinley Dudley, including the decision of the Court of Appeals, and the entire state court record as it pertains to this petitioner. When those comparisons are made, it is clear that the state court record stands on a different footing from the beginning as to this petitioner, giving full respect and authority to the decision of the Court of Appeals in *Dudley v. Duckworth*.

The court is generally reluctant to bottom decisions in cases under 28 U.S.C. § 2254 on the basis of harmless error. However, the record in this case as to the petitioner fits into the current formulation of harmless error in federal habeas cases in this circuit. This is in contrast to and in distinction from the situation in regard to McKinley Dudley. This court, therefore, concludes that the admission of the threat testimony, although constitutional error, did not have any effect on the petitioner's convictions for bank robbery and criminal recklessness. Since the evidence supporting both convictions is overwhelming, the constitutional error as applied to the petitioner was harmless beyond a reasonable doubt. Additionally, any prejudice caused by the erroneously admitted bad acts evidence was remedied by the state trial court's action in striking the evidence and admonishing the jury. Moreover, in light of the overwhelming evidence against the petitioner, such erroneously admitted evidence did not sway the jury's verdict. Lastly, the petitioner's constitutional rights were not violated when the state trial court denied his motion for psychiatric examination and admitted his confession into evidence. Accordingly, the petition for a writ of habeas corpus is hereby DENIED. IT IS SO ORDERED.